UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISON

IN RE:                                    )
                                          )
JODY D. LASHLEY                           )        CASE NO. 23-10735(1)(11)
                                          )
                                          )
                    DEBTOR       )

## MEMORANDUM-OPINION

The U.S. Trustee having filed a Motion to Convert Case to Case Under Chapter 7 or Dismiss Case on December 5, 2023 and Jody D. Lashley ("Debtor") having filed an Objection thereto on January 11, 2024, and the matter having come before the Court for an evidentiary hearing on July 18, 2024 (the "Evidentiary Hearing"); and the Court having heard the parties present at the Evidentiary Hearing, considered the evidenced contained in the record, and having reviewed the entire record and being otherwise sufficiently advised, hereby finds, concludes and orders as follows:

### I.    FINDINGS OF FACT

**A.    Jurisdiction, Venue, and Procedural History.**

1. The Debtor filed this bankruptcy case on September 29, 2023 (the "Petition Date") and elected to proceed under Subchapter V. The Debtor is a debtor in possession as defined in 11 U.S.C. § 1182 and continues to operate his sole proprietorships.

2. The Debtor is an individual resident of Edmonson County, Kentucky. Accordingly, venue

in the Western District of Kentucky was proper as of the Petition Date and continues to be proper under 28 U.S.C. § 1408.

3. On October 3, 2023, Elizabeth Woodward was appointed the Subchapter V trustee in this case.

4. On December 5, 2023, the U.S. Trustee filed a Motion to Convert Case to Case Under Chapter 7 or Dismiss Case (the "Motion to Convert or Dismiss") [Doc 35].

5. On January 11, 2024, the Debtor filed his Objection [Doc 53] to the Motion to Convert or Dismiss.

6. The Debtor filed two motions [Docs 44 and 48] to extend the time to file his plan.

7. Debtor filed his Subchapter V plan [Doc 50] (the "Plan") on January 8, 2024.

8. Objections to confirmation of the Plan were filed by the Elizon Master Participation Trust 1, [Doc 58], Farm Bureau Bank [Doc 64], Ally Bank [Doc 68], U.S. Trustee [Doc 70], Rent to Own Rentals [Doc 79] and Internal Revenue Service [Doc 80].

9. An initial hearing was held on the Motion to Convert or Dismiss on January 18, 2024.

10. Status hearings were held on the Motion to Convert or Dismiss and Plan confirmation on February 22, 2024, March 21, 2024, May 23, 2024, and June 13, 2024.

11. On June 14, 2024, the Court entered an Order [Doc 130] denying confirmation of the Debtor's Plan.

12. Pursuant to the Order for Evidentiary Hearing [Doc 131] and the Order Extending Certain Evidentiary Hearing Deadlines [Doc 141], the Debtor and U.S. Trustee tendered exhibits for use at the Evidentiary Hearing.

13. The Evidentiary Hearing on the Motion to Convert or Dismiss was held on July 18, 2024.

14. All exhibits of the parties were admitted at the Evidentiary Hearing without objection.

15. At the Evidentiary Hearing, the Court heard the testimony of four witnesses: Gary Grimes, Elizabeth Woodward, the Debtor, and Jeffrey Farmer.

**B.** **The Debtor's Unexcused Failure to Timely File Monthly Operating Reports and Reporting Deficiencies.**

The record in this case unequivocally establishes that the Debtor filed untimely monthly operating reports. The Debtor's October[1] and November[2] 2023 monthly operating reports were filed untimely on January 18, 2024, the day of the initial hearing of the Motion to Convert or Dismiss. The January[3] 2024 monthly operating report was filed untimely on March 20, 2024. The Debtor's March[4] 2024 operating report was not filed until May 28, 2024. The Debtor's May Operating Report[5] was filed the day before the Evidentiary Hearing on July 17, 2024.

In addition to being untimely, the monthly operating reports are deficient without the required Exhibit D cash disbursement ledgers or other financial reporting such as income statement (profit and loss) and/or balance sheet. The monthly operating reports only contain bank statements which provide minimal information for creditors. Due to these reporting deficiencies, the U.S. Trustee identified $57,920 in cash withdrawals and cash app transactions from October 2023 through June 2024 that are not explained or supported in the monthly operating reports. *See UST PX-13 UST Analysis of Checking and Venmo Withdrawals*.

The Court having found that the Debtor failed to timely file monthly operating reports, the Court must also determine whether such failure is unexcused. The Court finds the Debtor's

---

1 *See UST PX-7 October 2023 Operating Report.*
2 *See DX 9 Chapter 11 Small Business Operating Report for Month Ending 11/30/23.*
3 *See DX 11 Chapter 11 Small Business Operating Report for Month Ending 1/31/24.*
4 *See DX 14 Chapter 11 Small Business Operating Report for Month Ending 3/31/24.*
5 *See UST PX-10 May 2024 Operating Report.*

3

grounds for failure to be unexcused as the statements of the Debtor regarding his busy work schedule and the health issues of his life partner do not provide justification for not complying with the Debtor's reporting requirements and fiduciary obligations as a debtor in possession. The Debtor's circumstances are not unique as it is common for debtors in chapter 11 bankruptcy to experience some adversity and difficulties. Based on all the foregoing reasons, the Court finds cause exists under 11 U.S.C. § 1112(b)(4)(F) to convert or dismiss the case.

C.  **The Debtor's Failure to Timely File or Confirm a Plan Within a Reasonable Period of Time**.

On January 8, 2024, the Debtor filed a document that purported to be a plan. But that document failed to contain any liquidation analysis or projections, as required by section 1190(1) of the Bankruptcy Code. After multiple confirmation hearings were held and after consideration of multiple objections to confirmation, the Court entered an Order [Doc 130] denying confirmation of the Plan on June 14, 2024. To date, the Debtor has not filed a new plan. Ten months has passed in this case and the Debtor has not made progress in proposing a confirmable plan. Based on the foregoing, the Court finds cause exists under U.S.C. § 1112(b)(4)(J) to convert or dismiss the case.

D.  **The Debtor's Reorganization Prospects**.

During lake season, the Debtor generates income from his business operations including the installing, constructing, and repairing of boat docks and boat lifts through his d/b/a "Jody Lashley Custom Docks & Boat Lifts" and the "Poor Boy's General Store and Bait Shop". Off season, the Debtor generates income from general contracting services.[6]

According to the Debtor's Monthly Operating Reports for the period October 2023 through April 2024, the Debtor's average net monthly receipts were $848.07. *See Amended Exhibit UST*

---

6 *See* DX 3 Status Conference Report, par. 1.

*PX-1, UST Analysis of Monthly Operating Reports and Proposed Plan Payments.* Based on the $12,797.25 monthly payments proposed in the Debtor's Plan, the Debtor would have a shortage of $11,949.18 monthly to fund a Plan. *Id.* The Debtor's operating reports for May and June 2024 also reflect losses in the respective amounts of $3,980.44[7] and $1,670.13[8.] The Debtor's net monthly income is insufficient to fund a Plan.

The Debtor conducts his business operations at 1091 Moutardier Road, Leitchfield, Kentucky (the "Real Property"). According to the Debtor's Schedules[9], the Real Property consists of a 7-acre parcel with personal residence valued at $320,000 and 1.1 acres for a storefront, boat storage and wood shop valued at $200,000.

The Debtor has been completely unsuccessful in his attempts to privately sell the Real Property over the last few months. The day prior to the Evidentiary Hearing, the Debtor filed with the Court a Listing Agreement with Action Advisors, LLC d/b/a eXp Commercial for the sale of the Real Property at an initial listing price of $1,250,000 (the "Listing Agreement"). *See UST PX-9 Listing Contract.*

Paragraph 1 of the Listing Agreement provides that the sale of the Real Property includes: "going concern," operating under Po Boy Lawn Care and Construction, Po Boy Airboat Tours, Po Boy General Store & Bait Shop. *UST PX-9 Listing Contract, par. 1.* The Debtor testified that both Po Boy Lawn Care and Construction and Po Boy Airboat Tours are no longer active business entities. Jeffrey Farmer, the commercial broker, testified his listing price valuation of $1,250,000 (which included a $175,000 allocation to going concern value) was based on review of 2020 tax

---

[7] *See UST PX-10 May 2024 Operating Report*, pg. 2
[8] *See UST PX-11 June 2024 Operating Report*, pg. 2.
[9] *See UST PX-4 Schedules, A/B* Line 1.1 and Line 1.2.

5

returns and his mistaken belief that Po Boy Lawn Care and Construction and Po Boy Airboat Tours were active businesses. The Court finds the testimony of Mr. Farmer regarding the $1,250,000 "listing price" valuation to be unreliable due to this mistaken belief and because (i) he acknowledged the listing price was a starting high-end price; (ii) no discounting of the price was considered due to the Real Property being a bankruptcy estate asset; (iii) no discounting of the price occurred due to the location of a new Dollar General Store in close proximity to the General Store and Bait Shop (iv) the listing price is significantly higher than the $520,000 valuation in the Debtor's Schedules and (v) he has not reviewed any current financials of the Debtor.

Paragraph 20 of the Listing Agreement further provides: "Seller will provide three years of P & L Statements showing gross income, expenses and net operating income for review by potential Buyers under signed confidentiality agreement." *UST PX-9 Listing Contract, par. 20.* The Debtor acknowledges that he cannot provide potential buyers three years of profit and loss statements as he is only able to provide tax returns. The Debtor's inability to produce financials will negatively impact sale price.

Even assuming the Debtor could sell the Real Property for $1,250,000, this price would be insufficient to satisfy creditor claims in full. The Debtor's Plan provided for treatment of $1,525,652.28[10] in creditor claims. Based on the cash flow analysis in *Amended UST PX-1*, the sale of the Real Property (elimination of the secured Real Property payments) would still result in a $10,112.43 monthly shortage[11] to fund a Plan.

Ten months has passed in this case and the Debtor has only listed the Real Property. There

---

10 See UST PX-3 *Chapter 11 Plan of Reorganization* and *UST PX-1 (Amended)*.
11 The monthly payments proposed in the Plan to secured creditors, Theresa Stiles and Elizon Master Participation Trust 1 were $1,086.75 and $750. *See Amended Exhibit UST PX-1, UST Analysis of Monthly Operating Reports and Proposed Plan Payments*. This shortage does not take into consideration relocation and/or lease back expenses.

is not a pending offer or signed contract on the Real Property. The Debtor has not filed a new plan. The Debtor continues to accrue administrative expenses for Subchapter V trustee fees and the fees of Debtor's counsel. The Debtor did not present any financial projections or feasibility evidence at the Evidentiary Hearing.

Based on the foregoing, the Court finds that the Debtor has little prospect for reorganization.

**E.    Other Factors that Support Cause or Dismissal.**

The Debtor is required by statute, § 327 to obtain Court permission before employing professionals. The Debtor acknowledges he retained and paid an accountant to prepare tax returns without Court permission. At the time of trial, the record contained no application to employ an accountant.

**F.    The Debtor Failed to Establish the Unusual Circumstances Exception.**

The Court finds that the Debtor has failed to show unusual circumstances exist that conversion or dismissal is not in the best interest of creditors and the estate. The fact that the estate may have some equity in the Real Property does not rise to the level of an "unusual circumstance," as such circumstance is common in chapter 11 cases. Furthermore, the alleged equity in the Real Property is speculative and insufficient to satisfy the claims of all creditors.

The Court finds that the Debtor has not established that a plan will be confirmed within a reasonable period of time. The Court denied confirmation of the Debtor's Plan on June 14, 2024, and the Debtor has not filed a new plan. Ten months has passed without a plan being filed that complies with § 1190.   The Court finds that the grounds for converting or dismissing the case do not include an act or omission that is justifiable and curable within a reasonable period of time as

the Debtor's failure to timely file operating reports is unexcused.

**G.    Conversion to Chapter 7, Rather than Dismissal, is in the Best Interests of Creditors and the Estate.**

The bankruptcy estate is comprised of unencumbered assets including accounts receivable, preferences and other avoidance actions in the estimated amount of $197, 924 as set forth in *UST PX-2 Potential Assets for Chapter 7 Trustee*. As these assets could be administered by a chapter 7 trustee for the benefit of unsecured creditors, the Court finds that conversion to chapter 7 is in the best interest of creditors and the estate.

## II.    CONCLUSIONS OF LAW

**A. Jurisdiction and Venue.**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. A motion to dismiss or convert under 11 U.S.C. § 1112 is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) and 28 U.S.C. § 1334(b). Venue properly lies in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**B. Applicable Governing Standard; Burden of Proof.**

Section 1112(b) governs motions to dismiss or convert in chapter 11 cases, including cases under subchapter V. *Cal. Palms Addiction Recovery Campus, Inc. v. Vara (In re Cal. Palms Addiction Recovery Campus, Inc.)*, 87 F.4th 734, 741 (6th Cir. 2023) (holding that section 1112(b) applies in subchapter V because 11 U.S.C. § 1181(a) does not include it in its list of title 11 provisions that are inapplicable in subchapter V). *In re Pure Repair & Trucking LLC*, 658 B.R. 895, 903 (Bankr. S.D. Ohio 2024).

Section 1112(b) of the Bankruptcy Code provides:

[O]n request of a party in interest, and after notice and a hearing, the court shall convert a

8

case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditor and the estate. 11 U.S.C. § 1112(b)(1).

Section 1112(b) provides, in paragraph (4), a nonexclusive list of grounds which may constitute "cause" for dismissal or conversion. *In re Wahlie*, 417 B.R. 8, 11 (Bankr. N.D. Ohio 2009). As this list is not exclusive, and the Court may find non-statutory bases for cause as well. T*rident Assocs. Ltd. P'ship v. Metro. Life Ins. Co. (In re Trident Assocs. Ltd. P'ship),* 52 F.3d 127, 131 (6th Cir. 1995). The burden of establishing cause for conversion or dismissal is on the U.S. Trustee, by a preponderance of the evidence. *See In re Creekside Senior Apts. L.P.*, 489 B.R. 51, 60 (B.A.P. 6th Cir. 2013).

**C. The Debtor's Unexcused Failure to Timely File Monthly Reports Establishes Cause Under 11 U.S.C. § 1112(b)(4)(F).**

Pursuant to 11 U.S.C. § 1112(b)(4)(F), "cause" includes: *unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter*. 11 U.S.C. § 1112(b)(4)(F).  Monthly operating reports "are much more than busy work imposed upon a chapter 11 debtor for no reason other than to require it do something." *In re Berryhill*, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991). They are "the life blood" of chapter 11, enabling creditors to keep tabs on the debtor's post-petition operations. *Id*. Failure to file them-and file them timely-is a serious breach of the debtor's fiduciary obligations and "undermines the chapter 11 process." *All Denominational New Church*, 268 B.R. 536, 538 (8th Cir. BAP 2001).

Bankruptcy Code section 1187(b) requires a subchapter V debtor to comply with the requirements of Bankruptcy Code section 308. 11 U.S.C. § 1187(b).

a debtor to file certain periodic financial and other reports with the court during the pendency of its case. 11 U.S.C. § 308(b). Federal Rule of Bankruptcy Procedure 2015 implements these statutory requirements. Fed. R. Bankr. P. 2015. It requires a subchapter V debtor to file monthly operating reports by no later than 21 days after the last day of the preceding calendar month. Fed. R. Bankr. P. 2015(a)(6).

Monthly operating reports provide necessary information to the Court, creditors, and other parties in interest about the progress and prospects of a debtor's reorganization efforts." *ABCD Holdings, LLC v. Hannon (In re Hannon)*, 512 B.R. 1, 19 (Bankr. D. Mass. 2014). "Without these reports, the [U.S. Trustee] and creditors cannot determine when a debtor is incurring additional losses, is rendered administratively insolvent, or is transferring assets without authorization." *In re Whetten*, 473 B.R. 380, 383 (Bankr. D. Colo. 2012). "The reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements and they serve as a litmus test for a debtor's ability to reorganize." *Id.* at 384.

In this case, the Debtor has been serially delinquent in filing his monthly operating reports. The Debtor's statements about his busy work schedule and the health issues of his life partner, do not excuse this breach of his fiduciary obligations.

Likewise, the Debtor's failure to timely provide the U. S. Trustee with all the required information (no required Exhibit D or other financial information)—particularly "fulsome monthly operating reports"—was unexcused and supports a finding of cause. *See, e.g., In re Landmark Atl. Hess Farm, LLC*, 448 B.R. 707, 716-17 (Bankr. D. Md. 2011) (holding that the U.S. Trustee's opinion that the debtor's monthly operating report "contain[ed] deficiencies" was sufficient to find cause under § 1112(b)(4)(F)). In this case, the Debtor's repeated failure to file

10

timely monthly operating reports which notably were deficient establishes cause to dismiss the case or convert this case to a chapter 7 liquidation under 11 U.S.C. § 1112(b)(4)(F).

D. **The Debtor's Failure to Timely File a Plan Establishes Cause Under 11 U.S.C. § 1112(b)(4)(J).**

Under Bankruptcy Code Section 1112(b)(4)(J), the Debtor's failure to timely file a plan is cause for dismissal or conversion of its case to a chapter 7 liquidation. 11 U.S.C. § 1112(b)(4)(J). In compliance with § 1190, subchapter V plans shall include: (A) a brief history of the business operations of the debtor, (B) a liquidation analysis, and (C) projections with respect to the ability of the Debtor to make payments under the proposed plan of reorganization. 11 U.S.C.S. § 1190(1). For the 90-day period (including any extensions approved by the Court), the Debtor never filed a plan that complied with § 1190 as the proposed plan did not include a liquidation analysis or financial projections. Under the plain text of section 1190(1) - as well as a holistic reading of subchapter V — a "plan" that fails to include a liquidation analysis and projections fails to satisfy section 1189(b)'s requirement to file a plan within 90 days of the petition date. a "plan" that fails to include a liquidation analysis and projections fails to satisfy section 1189(b)'s requirement to file a plan within 90 days of the petition date. *In re United Safety & Alarms, Inc.*, 2024 Bankr. LEXIS 540, *3 (Bankr. S.D. Fla. 2024). Furthermore, Courts have explained that causes exists under § 1112(b)(4)(J) where the debtor's plan is materially incomplete or otherwise insufficient. *See, e.g., See In re Babayoff*, 445 B.R. 64, 78 (Bankr. E.D.N.Y. 2011). "[W]here . . . the plan contains inaccuracies and vague areas, as well as misstatements and deficiencies, conversion is warranted." *Id.* Here, the Plan filed by the Debtor was materially incomplete and insufficient. Based on the above, cause exists to dismiss or convert this case pursuant to 11 U.S.C. § 1112(b)(4)(J).

E.  **The Debtor's Failure to Confirm a Plan Within a Reasonable Period of Time Establishes Cause Under 11 U.S.C. § 1112(b)(4)(J).**

Courts have also determined that conversion or dismissal of a chapter 11 case is warranted for other reasons, including the debtor's "inability to effectuate a plan" and "unreasonable delay by the debtor that is prejudicial to creditors." *See, e.g., In re Abijoe Realty Corp.*, 943 F.2d 121, 128 (1st Cir. 1991) (concluding that "unreasonable delay" constitutes "cause" for dismissal of a chapter 11 case); *In re DCNC N.C. I, LLC*, 407 B.R. 651, 665 (Bankr. E.D. Pa. 2009) (concluding that "the inability to effectuate a plan by itself, provides cause for dismissal or conversion of a chapter 11 case"); *In re Ray*, 46 B.R. 424 (S.D.Ga.1984) (finding conversion warranted where debtor failed to propose confirmable plan in approximately one year).

Here, it is uncontroverted that the Debtor has been in bankruptcy for ten months and has not made progress toward proposing a confirmable plan. [A] debtor cannot wallow in chapter 11 indefinitely." *Aleshire v. Wells Fargo Bank, N.A.*, 589 B.R. 154, 162 (N.D. Ill. 2018) (*quoting Synovus Bank v. Brooks (In re Brooks),* 488 B.R. 483, 490 (Bankr. N.D. Ga. 2013*))*.  [A] debtor's inability to accomplish substantive progress toward confirmation inherently carries the risk of unreasonable and undue delay, which is nearly always prejudicial toward creditors . . . ." *In re Brooks*, 488 B.R. at 490. Therefore, "failure to confirm a plan itself constitutes cause for dismissing a chapter 11 petition." *Aleshire*, 589 B.R. at 162 (citing 11 U.S.C. § 1112(b)(4)(J)). In this case, almost a year has passed between the filing of the bankruptcy petition and the Debtor failed to obtain confirmation of a plan. Therefore, cause exists to dismiss or convert this case pursuant to 11 U.S.C. § 1112(b)(4)(J) for Debtor's failure to confirm a plan within a reasonable time.

F.  **There are No Unusual Circumstances Establishing That Converting or Dismissing the Case is Not in the Best Interests of Creditors and the Estate**.

Once cause is established, the Court shall convert or dismiss unless (1) there are unusual circumstances that establish that such relief is not in the best interests of creditors and the estate and (2) if the debtor or another party in interest establishes that (a) there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time and (b) the grounds for granting such relief include an act or omission (i) for which there exists a reasonable justification or (ii) that will be cured within a reasonable period of time fixed by the court. 11 U.S.C. § 1112(b)(2). The Debtor has the burden of proof to show that the unusual circumstances exception applies. *Whetten*, 473 B.R. at 382.

The exception in § 1112(b)(2) does not apply, for at least three reasons: because (1) there are no "unusual circumstances"[12] establishing that converting or dismissing this case is not in the best interests of creditors and the estate; (2) there is not a "reasonable likelihood that a plan will be confirmed" in this case; and (3) none of the "cause" grounds for converting or dismissing in this case include an act or omission that is justifiable and curable. Each of these reasons is alone sufficient to make § 1112(b)(2) inapplicable.

---

[12] The undefined term "unusual circumstances" as used in the statute contemplates conditions that are not common in Chapter 11 cases. *In re Fall*, 405 B.R. 863, 870 (Bankr. N.D. Ohio 2008).

G. **Conversion to Chapter 7, Rather than Dismissal, is in the Best Interests of Creditors and the Estate**.

The Bankruptcy Code does not establish a clear test for what is in the best interests of creditors and the estate, so the issue is entrusted to the Court's discretion. *In re Exigent Landscaping*, LLC, 656 B.R. 757, 774 (Bankr. E.D. Mich. 2024) (citing *In re Ozcelebi*, 639 B.R. 365, 425 (Bankr. S.D. Tex. 2022)). Creditors "are generally 'best served by the course of action that results in the largest number of [them] being paid the largest amount of money in the shortest amount of time.'" *Exigent Landscaping*, 656 B.R. at 774 (quoting *In re Aurora Memory Care, LLC*, 589 B.R. 631, 643 (Bankr. N.D. Ill. 2018)). Applying these considerations, in this case, a chapter 7 trustee, would be able to administer unencumbered assets and pursue avoidance actions for the benefit of unsecured creditors. Therefore, conversion is in the best interest of creditors and the estate. Accordingly, this case is converted to chapter 7 for cause under 11 U.S.C. § 1112.

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JODY D. LASHLEY ) | CASE NO. 23-10735(1)(11) |
| ) | |
| ) | |
| **DEBTOR** ) | |

## ORDER

This matter having come before the Court on the Motion to Convert Case to Case Under Chapter 7 or Dismiss Case filed by the U.S. Trustee, and the Court having reviewed the U.S. Trustee's Motion to Convert Case to Case Under Chapter 7 or Dismiss Case, and the Court having considered the testimony of the witnesses at the hearing held on July 18, 2024, as well as the arguments of counsel for both the U.S. Trustee and the Debtor Jody D. Lashley, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Chapter 11 case of Jody D. Lashley, Case No. 23-10735, be and hereby is, converted to a case under Chapter 7 of the United States Bankruptcy Code.

So ordered this 3rd day of September 2024.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: September 4, 2024